IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLENE C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 7326 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security, [1] ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER[2]

Plaintiff Charlene C.[3] seeks judicial review under 42 U.S.C. § 405(g) of a final decision of Defendant Commissioner of the Social Security Administration ("SSA") denying her request for waiver of overpayment of a portion of her Social Security Disability benefits ("SSI"). *See* 42 U.S.C. §§ 404(a), 1383(c)(3). The issue before this Court is whether Plaintiff is obligated to repay

---

[1]The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2]On December 7, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 8.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 22.)

[3]The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name, thereby suppressing her last name, in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield Unites of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants' names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

an overpayment of $9,967.00 in benefits she received between August 2005 and February 2008. On January 14, 2014, Plaintiff formally requested waiver of the overpayment; after the field office denied Plaintiff's request, she participated in a hearing before an administrative law judge ("ALJ") on April 4, 2017. The ALJ denied Plaintiff's request for waiver, and Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner (R. 2). *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Plaintiff has now moved for remand, arguing that the ALJ committed legal error in denying her request for waiver because the ALJ's determination was not supported by substantial evidence. (D.E. 18: Pl. Mem. in Support of Summ. J. at 2.) Before the Court are the parties' cross-motions for summary judgment.

## I. Background of Benefits Eligibility and Overpayment Rules

### A. Eligibility Rules

A recipient of disability benefits is permitted to work and earn money for up to nine months (which months do not have to be consecutive) while testing her ability to hold down a paying job before SSA will consider terminating benefits. 20 C.F.R. § 404.1592. This nine-month period is known as the "trial work period" and SSA only counts months towards the nine in which the claimant earns a sufficient amount of money to count as "substantial gainful activity" per SSA regulations ("SGA" or "substantial work"). *Id.* Once the trial work period ends, a claimant then enters a consecutive 36-month "extended period of eligibility" during which SSA considers the claimant's disability to have ceased, making her not entitled for benefits for any month in which she performs SGA. 20 C.F.R. § 404.1592a. During those 36 months, if a claimant's wages fall below the SGA level for any month, SSA will reinstate benefits for that month without the claimant

having to file a new application for benefits. *Id.* If a claimant is not working when her extended period of eligibility ends, and continues to have a disabling impairment, she will continue to receive benefits. https://www.ssa.gov/redbook/eng/ssdi-only-employment-supports.htm., *visited on* February 21, 2020. But, once a claimant begins working after the extended period of eligibility ends, she must file a new application for benefits if she becomes unable to work. *Id.*

B. Overpayment, Recoupment and Waiver Rules

An overpayment occurs when a recipient receives more than the amount of benefits she is due (usually because she was working at the same time) and thereby becomes obligated to refund the excess amount to SSA. See 42 U.S.C. § 404(a); 20 C.F.R. §§ 404.501–502.

In limited cases, the SSA may waive the recovery of an overpayment, but only if: (1) the recipient is without fault in causing the overpayment; and (2) recovery either defeats the purposes of the Social Security Act or goes against equity and good conscience. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.506; *see also Banuelos v. Apfel,* 165 F.3d 1166, 1173 (7th Cir. 1999) (overruled on other grounds by *Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999)). While SSA has the burden of proving the overpayment exists, the recipient has the burden of showing she is entitled to a waiver of repayment. *See, Begoun v. Astrue*, No. 09 C 1555, 2011 WL 307375 at *8 (N.D. Ill. Jan. 28, 2011). "Although the [Agency] may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507.

An individual is "at fault" for causing an overpayment (and thus not entitled to waiver) when the overpayment resulted from either (1) an incorrect statement made by the recipient that she knew or should have known was false, (2) failure to furnish information that the recipient knew

3

or should have known was material, or (3) acceptance of a payment that she knew or could have been expected to know was not the correct amount. *See* 20 C.F.R. §§ 404.507(a)-(c), 404.506; 42 CFR § 405.355. It does not matter if SSA is also at fault for mistakenly paying benefits to which a recipient is not entitled; if the claimant is at fault under any of the above three categories, then she must reimburse SSA for the overpayment. *Id.; Kainer-Carglie v. Colvin,* No. 11 C 7435, 2013 WL 5587084 at *4 (N.D. Ill. October 10, 2013).

When determining whether a recipient is without fault in causing the overpayment of benefits, SSA must take into account any physical, mental, educational, or linguistic limitations such individual may have, including any lack of facility with the English language. 42 U.S.C. § 404(b); 20 C.F.R. § 404.507. "The decision which must be reached in a fault determination is highly *subjective,* highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Lozano v. Apfel,* 1999 WL 731702, at *4 (N.D.Ill.1999) (emphasis original), citing *Jefferson v. Bowen,* 794 F.2d 631, 633 (11th Cir.1986) (quoting *Harrison v. Heckler,* 746 F.2d 480, 482 (9th Cir.1984)).

If a recipient is found to be without fault, the waiver analysis moves to the second step: SSA may waive recovery of the overpayment only if repayment also would defeat the purpose of the Act or go against principles of equity and good conscience. 42 U.S.C. § 404(b). Recovery of an overpayment defeats the purpose of the Act if it would deprive the individual of funds needed for ordinary and necessary living expenses. 20 C.F.R. § 404.508.

## II. Administrative Record

### A. History of SSA's Overpayment to Plaintiff

Plaintiff was born on May 5, 1951 and began receiving monthly disability benefits in 1985. (R. 35, 202.) On May 2, 2002, SSA sent Plaintiff a notice informing her that it had overpaid her

$2,474.00 between September 2001 and May 2002. (R. 265.) The notice explained to Plaintiff that she could request a waiver of the overpayment and contained a chart showing each specific month Plaintiff had been overpaid, the amount of the overpayment, the reason for it, and the amount she should have received instead. (*Id.,* 269.) The next SSA notice in the record is dated July 22, 2004, in which the SSA stated that the overpayment was now $4,598.02, but that the Agency agreed to waive $2,474.00 of the overpayment and Plaintiff was obligated to repay the balance of $2,124.00. (R. 262-63.) The July 2004 notice does not explain the source of the additional overpayment or the dates it was accrued; it states that Plaintiff agreed to repay the overpayment via monthly installments of $60.00 beginning in May 2004. (*Id.*) This overpayment and partial repayment are not at issue in this case but are relevant to the issue before us, as explained below.

On July 5, 2005, SSA sent a Notice of Proposed Decision to Plaintiff stating that based on her work history, "it appears we will decide your disability ended because of substantial work September 2002," and that she was not entitled to benefits for certain months between December 2002 and December 2004 because she performed substantial work for those months. The notice went on to explain that claimants are entitled to a nine-month, non-consecutive trial work period when they can attempt to return to work without jeopardizing their eligibility for benefits. (R. 259-60.) The notice stated that Plaintiff's trial work period had ended in August 2002. (*Id.*)

Next, the notice explained that after the end of the trial work period, claimants enter a consecutive 36-month extended period of eligibility, during which the SSA would restart benefits for any months in which the claimant did not perform substantial work, but stating that if a claimant worked after the end of the 36-month period, she was required to file a new application for benefits if she again became unable to work. (R. 260.) In Plaintiff's case, her extended period of disability

5

began September 2002 and would end "if substantial work is performed 36 months following this date." (*Id.*)

On July 25, 2005, the SSA sent Plaintiff a Notice of Disability Cessation, which stated that Plaintiff's nine-month trial work period had ended in August 2002 and that based on that determination, the SSA informed Plaintiff that she was not entitled to benefit payments for December 2002, April 2003 through May 2003, July 2003 through October 2003, May 2004 through June 2004, August 2004 and December 2004 because she performed substantial work during those months. (R. 37.) Plaintiff was entitled to benefits for the remaining months between September 2002 and December 2004 and was also entitled to payments beginning January 2005 because she "was no longer doing substantial work." (*Id.*) In addition, Plaintiff was to receive $230.00 monthly going forward. (*Id.*) On the following page, the noticed stated that Plaintiff's extended period of eligibility months were September 2002 through August 2005. (R. 38.) Under the subheading "Overpayment Information," it stated that because the SSA had not stopped Plaintiff's checks timely, she had been overpaid in the amount of $3,232.00 and would need to repay that amount. (*Id.*) If she was not able to repay the entire amount within 30 days, the SSA would begin recovering the overpayment from her benefits beginning with the amount she was due on October 3, 2005. (*Id.*)[4] On the fourth page of the statement, it explained that Plaintiff had the obligation to report any changes that might affect her eligibility for benefits, such as a return to work or change in her payments for current work. (R. 40.) The overpayment described in this

---

[4] The SSA notice does not explain how this $3,232.00 overpayment is related to the $2,124.00 overpayment Plaintiff was already repaying. Plaintiff alleges that the last check she received in 2005 was in July of that month. Defendant does not deny Plaintiff's assertion, but points to several payment summaries in the record that it contends show that "SSA withheld [Plaintiff's] benefit from October 2005 (her September check) until December 2006 (her November check)." (Def. Mem. in Support of Summ. J. at 3). Defendant does not identify the source of these summaries or explain how to interpret their various sections, so we decline to accept its characterization of when or how much Plaintiff received in benefits for any particular month.

letter is not subject to Plaintiff's request for waiver, but again is relevant to the overpayment for which Plaintiff is currently requesting be waived.

On September 2, 2005, Plaintiff received a Notice of Withholding stating that the SSA was withholding her benefits checks beginning with the one due September 2005 to repay the $3,232.00 overpayment that was identified in the July 25, 2005 notice. (R. 256.) Specifically, the notice contains a three-line chart showing that in September 2005 SSA would withhold $305.20 and Plaintiff would receive $0.00, that in July 2006 Plaintiff would receive $125.00 and SSA would withhold $180.00, and that in August 2006 SSA would pay Plaintiff $305.20 a month and the same amount going forward. (*Id.*) Plaintiff did not begin receiving checks in July 2006; instead, on November 1, 2006, the SSA informed Plaintiff that she was going to start receiving benefits again in November 2006, which she did. (R. 254.) In October 2007 Plaintiff informed SSA that she had begun working and SSA initiated an investigation into her work history. (R. 252-53.) On February 29, 2008, SSA notified Plaintiff that, although it had restarted her benefits during her extended period of eligibility because she was no longer doing substantial work, it discovered she had engaged in substantial work in 2005, 2006, and 2007, and thus she was not eligible to receive benefits from August 2005 through the date of the letter. (R. 249.) As a result, SSA found Plaintiff had been overpaid $9,967.00. (R. 251.)[5]

### B. Hearing Testimony

Plaintiff received a hearing on April 4, 2017. Plaintiff's attorney argued that Plaintiff should not be found at fault for the overpayment she received in 2007 and 2008 because she reported to SSA that she had returned to work in October 2007 at the substantial gainful activity ("SGA") level, and the amount of her monthly check was so small that she reasonably believed

---

[5] Plaintiff subsequently reapplied for and was granted disability benefits beginning February 2009.

she could work while collecting this amount. (R. 632-35.) For the years 2005 and 2006, Plaintiff's attorney explained that "she didn't understand she was in pay status because she wasn't getting a check," which the ALJ clarified as Plaintiff being "of the impression that she's cut off." (R. 624.)

The ALJ recognized that Plaintiff had been in 100% recoupment of her benefits in 2005 and 2006, and that she reported her return to work in October 2007. (R. 632-34.) Next, the ALJ and Plaintiff's attorney discussed the amount of the alleged overpayment; the ALJ stated that "it couldn't be $9,700 because she didn't get money for those years." (R.634.) Instead, the ALJ stated that he believed the proper overpayment amount was closer to $2,760, to which Plaintiff's attorney agreed, stating "she can't be at fault for an overpayment that didn't exist." (*Id.*).

At that point, the ALJ confirmed with Plaintiff's attorney that she would testify to the same information and offered to allow Plaintiff to testify, stating "I don't really see the need for it." (R. 635.) Plaintiff's attorney agreed that Plaintiff's testimony was not needed. (*Id.*)

**C. ALJ Opinion**

The ALJ determined that Plaintiff was at fault for the overpayment from August 2005 to February 2008 and thus not entitled to a waiver in the amount of $9,631.60. (R. 22.) He acknowledged Plaintiff did not report working in 2005 and 2006 because she thought her benefits had not been reinstated, based on the fact that she was not physically receiving benefits checks. (R. 22.) In addition, the ALJ recognized that when Plaintiff began receiving checks again in November 2006 (because SSA had finished recouping the previous overpayment), Plaintiff was again not working and thus did not think she had any reporting obligation until she began working in September 2007, at which time she did notify SSA. (R. 24.)

Despite Plaintiff's understanding or misunderstanding, the ALJ found that the notices Plaintiff received from SSA adequately explained her obligations to her. Specifically, he found

that the July 5, 2005 letter notified Plaintiff that her nine-month trial work period ended in August 2002, that her extended period of eligibility began in September 2002, and if she performed substantial work after the 36-month period ended in August 2005, she would not be eligible for reinstatement of benefits based solely on her work status. (R. 23.) Next, the ALJ determined that the July 25, 2005 notice was written in "plain, clearly understandable language" when it listed the months between December 2002 and December 2004 Plaintiff was not entitled to benefits, and that she herself had requested and received reinstatement in January 2005 because she reported that she was no longer working. (*Id.*) However, the ALJ pointed out that the notice also informed Plaintiff that because she had been previously overpaid, the SSA was going to begin withholding payments in October 2005 and would continue withholding until the overpayment was repaid. (*Id.*) The notice described Plaintiff's duty to report to the SSA if her work status changed, as when Plaintiff had in fact notified the SSA when she stopped working in January 2005. (*Id.*)

Third, the ALJ determined the September 2, 2005 notice was written in "plain, clearly understandable language" and that it informed Plaintiff that SSA had withheld her September 2005 benefit check to repay part of the $3,232.00 overpayment and would continue to withhold her checks until her previous overpayment was paid off. (*Id.*).

Taken all together, the ALJ found that these three notices, at the least, showed that Plaintiff knew or should have known that (1) if she engaged in substantial work after the end of her 36-month extended period of eligibility she would not be eligible to receive benefits; (2) it was her responsibility to report any new work; and (3) that her benefits were being withheld to repay an earlier overpayment. (*Id.*) Put another way, the ALJ found that the July 5, 2005 notice Plaintiff received "regarding an overpayment, a cessation of benefits, and a possible reinstatement of benefits" informed Plaintiff that she was in her extended period of eligibility. (R. 24.) He also

9

found that after Plaintiff received the July 25, 2005 notice that her benefits were being reinstated but withheld to repay the previous overpayment, she began working in August 2005 but did not report this work to the SSA. (R. 25.) The ALJ explained that if Plaintiff had reported this work, SSA "would have ceased her benefits outside the extended period of eligibility, rendering her ineligible for reinstatement without filing a new application." (*Id.*)

The ALJ rejected Plaintiff's argument that she did not understand the meaning of SSA's July notices simultaneously ceasing her benefits, reinstating her benefits, and withholding them to repay the previous overpayment. Therefore, the ALJ found she was "at fault" for continuing to accept benefits until she reported her work status to SSA in September 2007.

The ALJ did find that Plaintiff was not at fault in accepting her final overpayment in March 2008 (which payment was for February 2008) because she had received a cessation of benefits notice in February 2008 and yet still received her March check. (R. 25.) The ALJ found that Plaintiff should not have been expected to know that this payment was erroneous because she could not have known that the SSA was unable to stop that payment in time. (*Id.*) Finally, the ALJ found that, with respect to the second part of the test for determining whether to waive overpayment, Plaintiff's current expenses exceeded her income and that she required all of that income to meet her ordinary living expenses. (*Id.*) Therefore, the ALJ ultimately held that Plaintiff was responsible for repaying an overpayment in the amount of $9,631.60 covering benefits she received between August 2005 and February 2008.

### III. Analysis

#### A. Standard of Review

It is well-settled that the Court will uphold the ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C.A. § 405(g); *Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2013).

Evidence is substantial when it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation marks omitted). The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, because the ALJ must resolve all factual issues and evidentiary conflicts. *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir.2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Here, Plaintiff contends that the ALJ's determination that Plaintiff was "at fault" and thus not entitled to waiver for overpayment was not supported by substantial evidence. Plaintiff argues that she was not at fault in causing the overpayment because there is a "lack of clarity" in the notices the SSA sent her about whether there was a period of time when the SSA had Plaintiff in "pay" status but was recouping 100 percent of her benefits checks. (Pl. Mem. in Support of Summ. J. at 3.) She contends that the notices she received were confusing and that they, coupled with the SSA's actual behavior, reasonably led her to believe that she did not need to report her work to the SSA because she wasn't receiving benefits. (*Id.* at 5.)

As an initial matter, Plaintiff does not contest the fact that she was overpaid between August 2005 and February 2008, nor does she object to the amount of the overpayment.[6] Thus, those issues are waived and the only matter for us to decide is whether the ALJ adequately

---

[6] The record shows that Plaintiff did file earlier objections to the overpayment and disputed that she had received checks during some of the relevant time period. These objections were overruled at the administrative level, and after SSA provided Plaintiff evidence that she had endorsed and cashed benefits checks, she dropped the argument that she had not received them. (R. 21.) Furthermore, as we explain below, although the ALJ and Plaintiff's attorney discuss the fact that the amount of overpayment was likely much smaller than the $9,700 being sought by SSA, Plaintiff does not raise this argument or point to this discussion in her briefs.

11

supported his determination of fault. As we explain below, we find that the ALJ did not adequately support his determination that Plaintiff was at fault for the overpayment she received between August 2005 and November 2006. However, the ALJ does support his determination of fault for the overpayment Plaintiff received between December 2006 and February 2008. In our decision, we recognize that the ALJ's reasons for finding Plaintiff at fault are the same for the entire period of overpayment. However, as we explain below, we find that the ALJ's reasoning is only sufficient for the overpayments Plaintiff received after the period of recoupment ended in November 2006.

### B. August 2005 to November 2006 Overpayment

We find that the ALJ did not support his determination that Plaintiff was at fault for the overpayment she received during from August 2005 to November 2006 - the period of time SSA was recouping her benefits 100 percent. The ALJ's main support for finding Plaintiff at fault for this overpayment is that she received notices in July and September 2005 that used "plain, clearly understandable language" to explain her obligations with respect to her entitlement to benefits and obligation to report work. We disagree.

The communications Plaintiff received from SSA regarding her overpayment of benefits describe payment and eligibility events that happened in the past, but which were being considered after the fact to determine if and when SSA failed to stop Plaintiff's benefits on time, and how this failure affected Plaintiff's receipt of benefits in the present or future. The July 25, 2005 notice states both that SSA had already determined her disability had ended in September 2002 and concurrently stated that it was a "notice of disability cessation" as of August 2005. Moreover, despite stating that Plaintiff's disability was being "ceased," the first page of the letter informed her that she would start receiving $230 per month beginning in July 2005 and going forward, and then tells her on the second page that she was previously overpaid $3,232.00 which needed to be

12

repaid. The September 5, 2005 letter does not use the phrase "100 percent recoupment" but instead contains an abbreviated chart meant to convey that SSA would withhold Plaintiff's benefits checks until July 2006, when it would begin paying her again. In fact, SSA did not send Plaintiff another check until November 2006.

Plaintiff contends that – based on the language of the July 25, 2005 letter – she understood her benefits had been terminated, and thus, there was nothing for SSA to recoup, nor did she need to report when she began working. The ALJ accepted Plaintiff's receipt of three notices in July and September 2005 as sufficient evidence that she understood her obligations, without considering conflicting evidence to the contrary.

There are several pieces of evidence the ALJ does not address with respect to Plaintiff's confusion regarding the notices she received from SSA. *First,* as the transcript of the hearing demonstrates, the ALJ himself was under a misapprehension about Plaintiff's overpayment, telling Plaintiff's attorney that the amount was likely much lower than the SSA sought because "she didn't get money for all those years," *i.e.,* the years 2005 and 2006 when her benefits were being recouped 100 percent. If the ALJ could not understand that Plaintiff was simultaneously receiving benefits but having them withheld to repay a previous overpayment, it was not unreasonable that Plaintiff did not understand either but to instead believed that she was "not getting money" and thus had no obligation to report her work. He does not address his statements from the hearing in his opinion or explain why his understanding about Plaintiff's benefits changed. Given that the ALJ himself was unclear about the status of Plaintiff's eligibility for and receipt of benefits, we are troubled by his expectation that Plaintiff knew or should have known that she was wrongly receiving benefits for the entire overpayment period.

*Second,* our concern over the ALJ's misapprehension is compounded by the fact that he did not consider whether Plaintiff had any special circumstances that affected her ability to understand the notices she received or her obligations regarding her benefits. As already noted, an ALJ must "specifically take into account any physical, mental, educational, or linguistic limitation such individual may have." 42 U.S.C. 404(b); *see also* 20 C.F.R. § 404.507, *Kainer-Cargile v. Colvin*, No. 11 CV 7435, 2013 WL 5587084, at *5 (N.D. Ill. Oct. 10, 2013). In this case, not only did the ALJ not address whether Plaintiff's individual situation – such as her educational background – might have made her more likely to be confused about the notices she received from SSA, but he did not even take testimony from her at her hearing and therefore had no opportunity to question her about her misunderstanding regarding whether she was in 100 percent recoupment. *See, e.g., Piskorek v. Colvin,* No. 13 cv 3831, 2014 WL 5152565 *8 (N.D. Ill. October 7, 2014) (Remanding where ALJ made generalized conclusion that Plaintiff, a registered nurse, could not have been confused about the notices she received.) And as we described above, the information the ALJ obtained from the hearing (from Plaintiff's attorney and from his own assumptions) was erroneous.

*Third,* the ALJ also failed to properly consider Plaintiff's experience with a previous overpayment and waiver even though he described the facts of that overpayment and called them "relevant" to the overpayment in this case. (R. 20.) We do not know if the ALJ meant to imply that because Plaintiff had previously experienced an overpayment and recoupment scenario, she knew or should have known her obligations in this case, but in any event, the facts do not support that assumption. If anything, they show that the previous overpayment and recoupment were communicated to Plaintiff differently. For example, the letter Plaintiff received regarding her overpayment in 2002 listed each month she was overpaid, the amount of the overpayment, and the

14

reason for it. The 2004 letter from SSA acknowledged that Plaintiff agreed to repay $60 per month towards her overpayment, not that she was to be in 100 percent recoupment. Therefore, we decline to draw any inferences about Plaintiff's previous overpayment, although we note that the ALJ could have explored Plaintiff's understanding based on her previous experience with overpayment and waiver if he had questioned her about it at the hearing.

*Fourth,* the ALJ's finding that Plaintiff was not at fault for accepting her February 2008 payment in March (because she had just received a cessation of benefits notice and could not have been expected to know that SSA was unable to stop the February payment in time) has an impact on our consideration of the ALJ's finding that Plaintiff should have known she was not entitled to any benefits after August 2005. With the ALJ finding that Plaintiff was not at fault for accepting the February 2008 payment, there is less of a basis for his determination that Plaintiff should have known she was not entitled to any benefits after August 2005. The ALJ does not explain why the February 2008 payment should be treated any differently than other benefits paid after August 2005, or why SSA had sent Plaintiff yet another cessation of benefits notice two-and-one-half years after its previous notice.

For these reasons, we find that the ALJ failed to adequately support his finding that Plaintiff knew or should have known in August and September 2005 that she was both still receiving benefits and was in 100 percent recoupment, and thus had an obligation to report that she was working. Therefore, we find that Plaintiff is not at fault for the payments she "received" but which the SSA recouped between August 2005 and November 2006.

### C. December 2006 to February 2008 Overpayment

We found above that the ALJ did not adequately explain why he determined Plaintiff knew or should have known she was in 100 percent recoupment beginning August 2005 in part because

15

the ALJ failed to address the confusing nature of the notices Plaintiff received or the resultant reasonableness of her belief that her benefits had been terminated in August 2005. However, when Plaintiff began receiving benefits again in November 2006, the ALJ's failures of explanation no longer apply. Specifically, if the notices from the SSA and the fact that she was not receiving a physical check caused Plaintiff to believe that her benefits had been terminated in August 2005, then when they started arriving again in December 2006, she "knew or should have known" that they were coming to her in error.

To this end, we also agree with the ALJ that in December 2006, Plaintiff knew or should have known that her extended period of eligibility had ended and that she could not receive benefits without filing a new application. Although Plaintiff contends that the notices she received from the SSA in July and September 2005 were confusing and led her to believe that her benefits had been terminated, her confusion related her failure to understand that the was both "receiving" benefits and in 100 percent recoupment. She provides no evidence that she did not know the date her extended period of eligibility ended or what it meant, only that she found it irrelevant to her situation because she thought the SSA had terminated her benefits over a year earlier – in August 2005. Therefore, when Plaintiff began receiving checks again in December 2006, she knew or should have known they were arriving in error.

## CONCLUSION

For the foregoing reasons, we find that the ALJ's determination that Plaintiff was at fault was not supported by substantial evidence for the overpayments she received between August 2005 and November 2006, but that his determination of fault was supported for the overpayments Plaintiff received between December 2006 and February 2008. We remand the case for the ALJ to consider what evidence supports his finding that Plaintiff knew or should have known that she

16

was in 100 percent recoupment of her benefits between August 2005 and November 2006, taking into consideration the issues discussed in this opinion. Based on his determination, the ALJ should then calculate the exact amount of Plaintiff's overpayment that she is obligated to repay.

**ENTER:**

_____

**GABRIEL A. FUENTES**

**United States Magistrate Judge**

**DATED: May 28, 2020**